Estate of James A. Donan, Ruth Colby Donan, Executrix v. Commissioner.
Estate of James A. Donan v. Commissioner
Docket No. 5735.
United States Tax Court
1947 Tax Ct. Memo LEXIS 293; 6 T.C.M. (CCH) 185; T.C.M. (RIA) 47045; February 26, 1947
Z. N. Diamond, Esq., for the petitioner. Karl W. Windhorst, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of a deficiency of $820.40 in estate tax. The disputed issue is the propriety of the inclusion in decedent's gross estate of the proceeds of certain insurance policies on the life of decedent, such policies being in excess of the $40,000 exemption. The case was presented by a stipulation of facts and evidence adduced at the hearing, including a deposition. *294 Facts hereinafter appearing, which are not from the stipulation are found from this additional evidence. Findings of Fact The stipulated facts are hereby found accordingly. James A. Donan, hereinafter sometimes referred to as the decedent, died testate on February 3, 1941, a resident of Montclair, New Jersey at the approximate age of 45 years. The estate tax return for his estate was filed on May 4, 1942, with the collector of internal revenue for the fifth district of New Jersey at Newark, New Jersey. At various times prior to August 13, 1935, there were issued to the decedent by The Equitable Life Assurance Society of the United States, hereinafter referred to as Equitable, insurance policies on his life and upon which he paid premiums. All were ordinary life, except No. 2874250, which was subsequently converted to that type policy. The face amount of insurance, the named beneficiary, the effective date of the insurance, and the amount of annual premium with respect to each policy were as follows: Effective
Serial No.
Face Amount
Date of
Amount of
of Policy
of Insurance
Beneficiary
Insurance
Annual Premium
2,874,250
$10,000.00
Ida A. Donan
12/22/21
$ 447.40
(mother of insured)
3,929,862
10,000.00
Ruth Colby Donan
3/15/26
281.40
(wife of insured)
NM 4,502.632
2,500.00
Ruth Colby Donan
1/ 1/27
69.43
(wife of insured)
NM 4,502.633
2,500.00
Ruth Colby Donan
2/ 1/27
69.43
(wife of insured)
NM 4,502.634
2,500.00
Ruth Colby Donan
7/ 1/27
62.63
(wife of insured)
NM 4,502.635
2,500.00
Ruth Colby Donan
8/ 1/27
62.63
(wife of insured)
4,724,508
2,500.00
The National City Bank
of New York, as trustee
4/12/28
64.38
(rewritten 1/19/29)
4,724,510
2,500.00
The National City Bank of New York, as trustee
5/ 1/28
64.38
(rewritten 1/19/29)
4,724,512
2,500.00
The National City Bank of New York, as trustee
6/ 1/28
64.38
(rewritten 1/19/29)
4,724,514
2,500.00
The National City Bank of New York, as trustee
7/ 1/28
64.38
(rewritten 1/19/29)
4,724,516
2,500.00
The National City Bank of New York, as trustee
8/ 1/28
64.38
(rewritten 1/19/29)
4,724,518
2,500.00
The National City Bank of New York, as trustee
10/ 1/28
66.25
(rewritten 1/19/29)
NM 7,538,650
$ 1,000.00
Ruth Colby Donan
12/20/28
$ 30.25
(wife of the insured)
7,590,369
2,000.00
Ruth Colby Donan and The Na-
tional City Bank of New York, as
Trustees under Trust Agreement
dated May 7, 1927
1/17/29
60.50
7,590,370
2,000.00
2/15/29
60.50
Total
$50,000.00
$1,532.32
*295 All except the policy dated December 20, 1928, were rewritten November 22, 1935, as hereafter related. The "Beneficiary" paragraphs in policies numbered 2,874,250, 3,929,862, NM 4,502,632, NM 4,502,633, NM 4,502,634 and NM 4,502,635 provided that if there was no valid written assignment of the policy, the insured could change the beneficiaries, or the insured (or assignee, if any) might, without the consent of the beneficiary, surrender, assign or pledge the policy and "receive, exercise and enjoy" the rights given the insured by the terms of the policy. It was also provided: If the executors, administrators or assigns of the Insured be not expressly designated as beneficiary and if there be no other beneficiary living at the death of the Insured, payment will be made to the surviving children of the Insured; or should none survive, then to the Insured's executors, administrators or assigns. The "Beneficiary" paragraphs in policies numbered NM 4,724,508, 4,724,510, 4,724,512, 4,724,514, 4,724,516, 4,724,518, NM 7,538,650, 7,590,369 and 7,590,370 provided that if there was no valid written assignment of the policy, the insured could change the beneficiaries. It was also provided: *296 If the executors or administrators of the Insured be not expressly designated as beneficiary, any part of the proceeds of this policy with respect to which there is no designated beneficiary living at the death of the Insured and no assignee entitled thereto, will be payable to the children of the Insured who survive the Insured; or should none survive, then to the Insured's executors or administrators. And it was also provided that the insured (or assignee, if any) may, without the consent of the beneficiary, surrender, assign or pledge the policy; that "An assignment by the Insured shall operate to exclude any and all rights of any beneficiary except that upon release of all outstanding assignments" all rights were to be the same as if the assignment had not taken place; and that if assigned or "pledged as collateral only by the Insured any equity remaining at the death of the Insured shall accrue to the beneficiary." On August 13, 1935, instruments described as absolute assignments of the insurance policies were executed by decedent in favor of his wife, and on or about August 14, 1935, these instruments were filed with The Equitable Life Assurance Society of the United States. *297 The instruments of assignments provided as follows: FOR ONE DOLLAR, to me in hand paid, and for other valuable considerations (the receipt of which is hereby acknowledged) I hereby assign, transfer and set over Policy No. * * * on the life of James A. Donan. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES with all rights therein, and with all money now or hereafter due or payable thereon, and all dividends, options, benefits or advantages derived therefrom, including the right to surrender said policy at any time and to receive and receipt for the surrender value thereof, to Ruth Colby Donan whose P.O. address is 117 Gates Avenue, Montclair, N.J. and for the consideration above expressed I do also for my executors and administrators, guarantee the validity and sufficiency of this assignment to the assignee named herein her executors, administrators and assigns; and her title to the said policy will forever warrant and defend. On November 7, 1935, an instrument was executed by Ruth Colby Donan, as "owner" and decedent as "insured" making application to the Equitable with respect to all the policies except No. NM 7,538,650 - * * * to make the following change in *298 Policy No. * * * by endorsement on said policy changing Beneficiary to the Insured's executors or administrators thereafter cancelling each of said Policies and issuing in place thereof policies on the Corporate and Absolute Owner form with all rights vested in RUTH COLBY DONAN, wife of JAMES A. DONAN, her executors or administrators, Owner. SPECIAL BENEFICIARY: to the Special Beneficiaries as named in the SPECIAL PROVISION attached hereto bearing date of this request and in accordance therewith. Attach to and make part of each of said Policies, Agreement P.F. 1223. Send premium notices to Owner at: Room 1567, 26 Broadway, N. Y. C., c/o James A. Donan. Agreements P.F. 1205, 1210, and 1216 not to be included in the reissued policies. It was agreed in the application that if the new policies were issued they would be subject to outstanding loans by Equitable. On or about November 22, 1935, Equitable, pursuant to Ruth's application, called the policies, exclusive of policy NM 7,538,650, and issued to take their place rewritten policies on an absolute owner form to Ruth Colby Donan. The typewritten words "rewritten November 22, 1935" appear on the face of each of the policies. Each *299 policy as rewritten contains the following undated notation: Owner. The rights of owners under the terms of this policy are vested in Ruth Colby Donan, wife of said James A. Donan, her executors or administrators. The payment of the face amount of each rewritten policy, upon receipt of due proof of the death of the insured was to be made in accordance with the Special Provision which had been part of the application and which provided in part as follows: SPECIAL PROVISION: 1. It is hereby specially provided that settlement of the total amount becoming due by reason of the death of the Insured under such of the following Policies No. 2,874,250; 3,929,862; NM4,502,632; NM4,502,633; NM4,502,634; NM4,502,635; 4,724,508; 4,724,510; 4,724,512; 4,724,514; 4,724,516; 4,724,518; 7,590,369 and 7,590,370, as may then be payable as herein provided shall be made with the Insured's wife, RUTH COLBY DONAN, if living, as provided in Paragraph 2, if not living, such total amount shall be divided into the number of equal shares that will provide: One share for each of the Insured's sons, JAMES C. DONAN, ANDERSON W. DONAN and HOLLAND R. DONAN, who may then be surviving and settlement of each *300 such share shall be made with such respective son as provided in Paragraph 3, and/or One share for the then surviving children of each said son of the Insured who may not then be surviving and each such share shall be paid in a single sum in equal shares to such children of such deceased son of the Insured, should none survive, such total amount shall be paid in a single sum to the Insured's executors or administrators. 2. The amount becoming due to the Insured's said wife under Paragraph 1 shall be left on deposit with the Society in accordance with Option 1 of the Modes of Settlement at Maturity of Policy, during her lifetime, interest payable monthly except that said wife shall have the privilege on interest due dates prior to the TENTH ANNIVERSARY of receipt of due proof of the death of the Insured of making withdrawals not to exceed ONE THOUSAND DOLLARS per annum until the amount held on deposit shall have been withdrawn, the final withdrawal to be the balance of the amount remaining on deposit but no partial withdrawal, other than such final withdrawal may be made for less than FIVE HUNDRED DOLLARS. In the event of the death of the Insured's said wife subsequent to the death *301 of the Insured but while any amount is held under said Option 1, the amount so held, together with any interest accrued thereon, shall be divided into the number of equal shares that will provide: One share for each of the Insured's said sons who may then be surviving and settlement of each such share shall be made with such respective son as provided in Paragraph 3, and/or One share for the then surviving children of each said son of the insured who may not then be surviving and each such share shall be paid in a single sum in equal shares to such children of such deceased son of the Insured. should none survive, such amount shall be paid in a single sum to the Insured's executors or administrators. Paragraph 3 of the Special Provision, which followed the above quotation, was effective only in the event the wife and children survived the decedent. The terms of paragraph 3 of the Special Provision are similar to the terms of the decedent's will wherein a series of trusts were created for the wife and children with respect to the residuary estate. The will was executed one day prior to the application for the rewritten policies incorporating the special beneficiary provision. *302 There were additional changes relating to policy No. 2,874,250, which had been a 20-year payment life policy, it being provided in the new policy issued on or about November 22, 1935, that it would be an ordinary life insurance policy. The annual premiums under the old policy were $444.40, and those under the new policy were $244.80. Other changes were made as to loan and cash surrender values. At the time of the assignments, decedent was 39 years of age and actively engaged as advertising manager of the Standard Oil Company of New Jersey and four other Standard Oil companies. His work required that he do a considerable amount of entertaining. In 1935 and to the date of his death in 1941, decedent was extremely active physically. He rode horse-back, swam, played 18 holes of golf every Saturday and took a cold shower every morning. The physician who attended decedent from 1933 until the date of his death, and made written records of periodic physical check-ups of decedent, did not regard his physical condition as abnormal up through 1935. An examination on October 14, 1935, was the one closest to the date of the transfer in question. On September 11, 1934, X-rays and an electro-cardiogram *303 were taken. Decedent had complained of pre-cardial distress, which is a coronary tightness experienced on exertion and is due to a spasm of coronary vessels. His physician was unable to diagnose it. On the 3rd of February, 1941, decedent went to his physician and complained of an attack of night breathlessness, stating that he had been awakened from his sleep and had "air hunger" and complained of shortness of breath on bending and walking. His weight was 173 1/2 pounds. His heart suggested a galloping rhythm. An X-ray confirmed a diagnosis of coronary thrombosis. His doctor begged him to go to the hospital but he refused. He went to the office and collapsed; was taken to the hospital and died that night. A positive diagnosis of coronary disease is difficult. His doctor never told decedent that he was even suspicious of a coronary condition, although he continually searched for symptoms to confirm such a suspicion. In an application for insurance in 1928, decedent stated that years before he had been rated up for insurance; that he had abnormal blood pressure in 1923, which was completely cured. From 1934 to the date of his death his blood pressure ranged from normal to slightly *304 elevated. Such an elevation in blood pressure can result from tension. Decedent's physician did not think that the tempo of his life was responsible for it, nor did he think that it was sufficiently elevated to be regarded as serious. He regarded decedent as a very conscientious, good, family man. At the time of the transfers of the policies by decedent to his wife in 1935, they had three minor children, the oldest of whom was about 14 years. When decedent talked to his attorney about the matter of making the transfers he stated that his position with the Standard Oil Company was uncertain because of political situations which had developed within the Company; that he had previously used some of his wife's property as collateral for his loans; and that he desired to divest himself of his interest in the policies in favor of his wife. He also stated that he probably would not need the proceeds of the policies by reason of his substantial interest in the profit-sharing and retirement plan of the Standard Oil Company. His attorney arranged with the Insurance Company's representative to make the assignments of the policies. His attorney suggested that decedent make his will, and in *305 November, 1935, after the assignment of the insurance policies had been made the decedent made his will. The suggestion by decedent's attorney was in accordance with the attorney's regular practice in such matters. At the time of the transfer of the policies decedent's wife had sufficient funds of her own to take care of the premiums on the assigned policies and to meet future premium requirements on them. As a general proposition decedent paid the premiums on the policies. Both before and after the assignment in 1935, and up to decedent's death, decedent's wife occasionally paid the premiums. In the estate tax return for decedent the insurance proceeds from policies Nos. 2,874,250, NM 4,502,632, and NM 7,538,650 were regarded as having had all premiums paid by decedent. Decedent and his wife regarded and handled their financial matters as a joint transaction. Opinion Its facts make this proceeding indistinguishable from . By the arrangement with the insurance company made by the decedent and his wife almost contemporaneously with the assignment of the policies to her, the proceeds were payable on a "survivorship" arrangement. *306 If the wife did not survive decedent she took nothing. If the minor children, or their issue, if any, did not survive decedent, they took nothing. If neither wife nor descendants survived, the property was to pass as a part of decedent's estate. Under those circumstances, the property is includible as insurance, under 811(g). Cf. . The fact, if it be such, that decedent's wife might have surrendered the policies or changed the beneficiaries during decedent's life is not material. She did not, in fact, do so. And we cannot accept petitioner's contention that the rewriting of the policies created anything new. They were thereafter merely the continuation of a previous contractual relationship with changes not material to their basic character. Although decedent's wife claimed to have paid some premiums subsequent to the assignment, she was unable to substantiate the disbursement of any definite amount. For all that appears, the payments made by her may have been entirely inconsequential. Even were the date of decedent's death *307 such as to make it permissible to apportion the includible insurance in accordance with the amount of premiums paid by decedent on the one hand, and his wife on the other, Revenue Act of 1942, section 404, that action would not be warranted in the present proceeding. The transfers in question may well be includible also as made in contemplation of death under section 811 (c). See (December 30, 1946); ; (December 12, 1946); ; and , certiorari denied . We find it unnecessary to pass upon this additional contention of respondent. Decision will be entered for respondent.